UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WALTER L. COLE, | No. 2:17-cv-0276 AC P |
| Plaintiff, | |
| v. | ORDER |
| M. SAWAYA, et al., | |
| Defendants. | |

**I.     Introduction**

Plaintiff is a state prisoner at California State Prison Sacramento (CSP-SAC), under the authority of the California Department of Corrections and Rehabilitation (CDCR). Plaintiff proceeds pro se with a civil rights complaint filed pursuant to 42 U.S.C. § 1983, and a request to proceed in forma pauperis. This action is referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302(c). For the following reasons, the court grants plaintiff's request to proceed in forma pauperis but finds that the complaint, as framed, does not state a cognizable claim against any of the named defendants. Accordingly, the complaint will not be served. Instead, plaintiff will be granted leave to file a First Amended Complaint within thirty days.

**II.     In Forma Pauperis Application**

Plaintiff has submitted an affidavit and his prison trust account statement that make the

showing required by 28 U.S.C. § 1915(a). See ECF No. 2. Accordingly, plaintiff's request to proceed in forma pauperis will be granted.

Plaintiff must still pay the statutory filing fee of $350.00 for this action with periodic deductions from his prison trust account. 28 U.S.C. §§ 1914(a), 1915(b)(1). By this order, plaintiff will be assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). By separate order, the court will direct the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and forward it to the Clerk of the Court. Thereafter, plaintiff will be obligated to make monthly payments of twenty percent of the preceding month's income credited to plaintiff's trust account. These payments will be forwarded by the appropriate agency to the Clerk of the Court each time the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

**III.     Legal Standards for Screening Prisoner Civil Rights Complaint**

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984).

Rule 8 of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly at 555). To survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to "state a

claim to relief that is plausible on its face.'" Iqbal at 678 (quoting Twombly at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (citing Twombly at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" Id. (quoting Twombly at 557).

"A document filed pro se is 'to be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976) (internal quotation marks omitted)). See also Fed. R. Civ. P. 8(e) ("Pleadings shall be so construed as to do justice."). Additionally, a pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies cannot be cured by amendment. See Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987).

### IV. Screening of Plaintiff's Complaint

#### A. DEFENDANT SAWAYA

##### 1. Plaintiff's Allegations

Plaintiff makes several allegations against Correctional Officer M. Sawaya. Plaintiff alleges that on January 27, 2015, he was released from his cell to report to a medical ducat. As plaintiff was leaving the building, Sawaya stopped him to conduct a search. Sawaya removed plaintiff's wallet from his back pocket. Plaintiff states that he keeps his phone book and legal documents in his wallet. While Sawaya was searching plaintiff's property, plaintiff began talking with Correctional Officer Carling about obtaining a lower bunk. After about ten minutes, plaintiff asked Sawaya why he was reading plaintiff's phone book. Sawaya told plaintiff not to worry and to keep talking with Carling. Plaintiff stated under his breath that "it's too early for all of this fucking shit." ECF No. 1 at 4 (minor edits).

Sawaya allegedly went into a "rampage," told plaintiff that he couldn't say "fuck me," and ordered plaintiff to turn around to be cuffed. Plaintiff was wearing medical wrist braces to treat

3

his carpal tunnel syndrome and ganglion cysts. Sawaya told plaintiff to "take that shit off" but plaintiff explained that the braces were medically required. Sawaya repeatedly "tried to force" the handcuffs around plaintiff's braces, causing him "extreme pain" and apparently breaking plaintiff's watch. Id. at 4, 6. When plaintiff offered to "just walk to the sallyport cages," Sawaya told him to start walking. Once there, Sawaya directed plaintiff to strip for an unclothed body search, placed plaintiff's clothing on top of a locker and left plaintiff standing naked inside a cold cage while he went to talk with another officer. Plaintiff was humiliated and freezing and had to ask another officer for his clothing. Sawaya left the area and left plaintiff in the cage. After about 45 minutes, plaintiff notified another officer that he had a medical chrono precluding standing more than 30 minutes. Plaintiff was transferred to a "ZZ-Cell" still within lockup.

About two hours later, plaintiff saw Sawaya pushing a cart to the property room with plaintiff's Etron Radio and other personal property, including property of plaintiff's cellmate. When plaintiff was returned to his cell, his cellmate said that Sawaya told him "that the reason he was searching the cell is because Inmate Cole was getting into it with officers on B-Facility," and that he'd "just have to deal with the heat that goes along with him as your cellmate." Id. at 5. Plaintiff construed Sawaya's search of his cell as retaliatory, not just a random search. Id. at 6. Plaintiff sought to resolve matters informally through an administrative request for interview, but Sawaya refused to reply. Thereafter plaintiff filed an inmate appeal. Plaintiff alleges that as a result of Sawaya's actions, including "illegally" placing plaintiff in a cage and then in a holding cell for hours, plaintiff has "suffered mental anguish, humiliation fear and depression which has exacerbated [his] prior mental illness." Id. at 9. Plaintiff alleges that Sawaya's conduct constituted "harassment/cruel and unusual punishment, retaliation, humiliation, emotional distress." Id. at 3. Plaintiff seeks compensatory and punitive damages against Sawaya. Id. at 3, 10.

### 2. **Analysis**

Plaintiff claims that Sawaya is liable for cruel and unusual punishment, retaliation, and "harassment . . . humiliation [and] emotional distress." Id. at 3. For the reasons that follow, the court finds plaintiff's allegations insufficient to state a cognizable legal claim against Sawaya.

4

However, subject to the following legal standards, plaintiff may attempt to reframe his allegations against defendant Sawaya in an amended complaint.

### a. **Excessive Force**

Plaintiff's alleges that Sawaya, while in a "rampage," repeatedly "tried to force" handcuffs around plaintiff's medical wrist braces, apparently with sufficient force to break plaintiff's watch, causing plaintiff "extreme pain." However, when plaintiff suggested to Sawaya they "just walk to the sallyport cages," Sawaya told him to start walking. These allegations are insufficient to state a cognizable claim for the use of excessive force.

"In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not ... use excessive physical force against prisoners." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (citing Hudson v. McMillian, 503 U.S. 1 (1992)). "[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is ... whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 6-7 (citing Whitley v. Albers, 475 U.S. 312 (1986)). When determining whether the force was excessive, we look to the "extent of the injury ..., the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" Hudson, 503 U.S. at 7 (citing Whitley, 475 U.S. at 321).

Significantly, "not 'every malevolent touch by a prison guard gives rise to a federal cause of action.'" Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (quoting Hudson, 503 U.S. at 9). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind. An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." Wilkins, 559 U.S. at 37-8 (citations and internal quotation marks omitted).

In the present case, it appears that the challenged incident was relatively short in duration and did not result in injury to plaintiff; nor does plaintiff allege that Sawaya's challenged conduct

5

reflected more than momentary frustration or anger. However, plaintiff may reconsider this claim subject to these legal standards and attempt, in an amended complaint, to state a cognizable excessive force claim against defendant Sawaya.

### b. Cruel and Unusual Punishment

Plaintiff alleges that once he and Sawaya reached the sallyport cages, Sawaya directed plaintiff to strip for an unclothed body search, then left plaintiff standing naked inside a cold cage, freezing and feeling humiliated. Plaintiff had to ask another officer for his clothes. After about 45 minutes, plaintiff notified another officer that he had a medical chrono precluding standing more than 30 minutes and was transferred to another cell. As framed, these allegations are insufficient to state a cognizable claim for cruel and unusual punishment.

"[A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities. . . . The second requirement follows from the principle that only the unnecessary and wanton infliction of pain implicates the Eighth Amendment. To violate the Cruel and Unusual Punishments Clause, a prison official must have a sufficiently culpable state of mind. In prison-conditions cases that state of mind is one of deliberate indifference to inmate health or safety[.] . . . [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 834, 837 (citations and internal quotation marks omitted).

Plaintiff's allegations do not demonstrate an objectively and sufficiently serious deprivation. Cf., e.g., Erler v. Dominguez, 2010 WL 670235, at *5, 2010 U.S. Dist. LEXIS 15504 (N.D. Ind. Feb. 18, 2010) (finding Eighth Amendment claim premised, inter alia, on stripping naked a suicide watch prisoner and subjecting him to gusting air conditioner, apparently for a period of eleven days); see also Dixon v. Godinez, 114 F.3d 640, 643 (7th Cir. 1997) ("it is not just the severity of the cold, but the duration of the condition, which determines whether the

conditions of confinement are unconstitutional"). Moreover, while it is reasonable to infer that Sawaya's conduct was spiteful, plaintiff's allegations do not support a reasonable inference that defendant knew of and disregarded a substantial risk of harm to plaintiff's health or safety.

Finally, allegations of harassment and intent to humiliate a prisoner do not usually state a cognizable claim in conditions of confinement cases. "Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." McMillian, 503 U.S. at 9 (citations and internal quotation marks omitted). Thus, "courts considering a prisoner's claim must ask: 1) if the officials acted with a sufficiently culpable state of mind; and 2) if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." Somers v. Thurman, 109 F.3d 614, 622 (9th Cir. 1997), cert. denied 522 U.S. 852 (citing, inter alia, McMillian, 503 U.S. at 8).

Subject to these legal standards, plaintiff may reconsider and attempt, in an amended complaint, to state a cognizable cruel and unusual punishment claim against Sawaya.

### c. **Retaliation**

Plaintiff alleges that Sawaya acted in retaliation for plaintiff's disrespectful statement. However, to state a cognizable retaliation claim a prisoner must plausibly allege that defendant's challenged conduct was motivated, at least in part, by plaintiff's constitutionally protected activity. Plaintiff has cited no authority, and the court has found none, that would permit construing plaintiff's statement to defendant as constitutionally protected.

Cognizable retaliation claims within a prison setting are generally premised on the First Amendment. Filing administrative grievances and initiating litigation are constitutionally protected activities under the First Amendment, and it is impermissible for prison officials to retaliate against prisoners for engaging in those activities. Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005);[1] see also Silva v. Di Vittorio, 658 F.3d 1090, 1104 (9th Cir. 2011)

---

[1] "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate

7

(prisoners retain First Amendment rights not inconsistent with their prisoner status or penological objectives, including the right to file inmate appeals and the right to pursue civil rights litigation); Brodheim v. Cry, 484 F.3d 1262, 1269 (9th Cir. 2009) (a prisoner's right to file a prison grievance is a constitutionally protected First Amendment right).

However, a prisoner inmate retains only "those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822 (1974); see also Turner v. Safley, 482 U.S. 78, 87 (1987) (challenges to prison regulations that burden fundamental rights must be reasonably related to legitimate penological objectives). "In the First Amendment context . . . some rights are simply inconsistent with the status of a prisoner or 'with the legitimate penological objectives of the corrections system.'" Shaw v. Murphy, 532 U.S. 223, 229 (2001) (quoting Pell v. Procunier, 417 U.S. 817, 822 (1974)). "Standing in his cell in a prison, an inmate is quite limited in what he can say; his government jailor can impose speech-limiting regulations that are 'reasonably related to legitimate penological interests.'" Thaddeus-X v. Blatter, 175 F.3d 378, 389 (6th Cir. 1999) (quoting Turner, 482 U.S. at 89); accord, Marks v. Giles, 2008 WL 4425866, at *1, 2008 U.S. Dist. LEXIS 72717 (W.D. Wash. Sept. 24, 2008) ("Plaintiff's argument, that his use of profanity while in a conflict with a staff member at NDC was protected speech, and that punishment for his use of profanity was a violation of his First Amendment rights, is without merit.").

Under these standards, the allegations of the complaint do not state a cognizable retaliation claim against defendant Sawaya. Nevertheless, plaintiff will be granted leave to reconsider his claim and, if appropriate, again attempt to state a cognizable retaliation claim

---

correctional goal." Rhodes, 408 F.3d at 567-68 (fn. and citations omitted). At the pleading stage, the "chilling" requirement is met if the "official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." Id. at 568 (citation and internal quotation marks omitted). However, direct and tangible harm will support a First Amendment retaliation claim even without demonstration of a chilling effect on the further exercise of a prisoner's First Amendment rights. Rhodes, at 568 n.11. "[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm" as a retaliatory adverse action. Brodheim, 584 F.3d at 1269 (citing Rhodes, 408 F.3d at 568, n.11).

against Sawaya in an amended complaint.[2]

**B.  DEFENDANTS COMPTON, BURNETT AND RASMUSSEN**

**1.  Plaintiff's Allegations**

Plaintiff's remaining allegations challenge the processing of his administrative grievance against Sawaya by defendants Compton, Rasmussen and Burnett. See ECF No. 1 at 6-9. Plaintiff contends, inter alia, that these defendants improperly failed to accept and process his grievance as initially framed; required that plaintiff separately grieve each matter despite their alleged occurrence on the same day; then cancelled review. Plaintiff asserts these defendants engaged in retaliation, corruption and the obstruction of justice by, inter alia, improperly postponing, returning, rejecting and cancelling plaintiff's appeals. Id. at 3, 6-9. Plaintiff seeks compensatory and punitive damages. Id. at 3, 10.

**2.  Analysis**

Although a prisoner's First Amendment right to petition the government for redress of grievances includes the right to pursue available prison administrative remedies, Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005), "[t]here is no legitimate claim of entitlement to a grievance procedure," Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988), cert. denied, 488 U.S. 898 (1988). Because prisoners are not entitled to prison grievance procedures as a matter of course, a claim that prison officials failed to comply with such procedures or failed to resolve a particular grievance in a favorable manner is not cognizable under Section 1983. See Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (failure to process plaintiff's grievances not actionable under Section 1983). For these reasons, it does not appear that plaintiff can state a cognizable claim against defendants Compton, Rasmussen or Burnett based on their alleged failure to

---

[2] Plaintiff does not expressly challenge the confiscation or breakage of his personal items. The unauthorized deprivation of property by a prison official, whether intentional or negligent, does not state a claim under Section 1983 if the state provides an adequate post-deprivation remedy. See Hudson v. Palmer, 468 U.S. 517, 533 (1984). California law provides such an adequate post-deprivation remedy. See Barnett v. Centoni, 31 F.3d 813, 816-17 (9th Cir.1994) (per curiam) (citing Cal. Govt. Code §§ 810-95). Therefore, only an intentional and authorized deprivation of property may constitute an actionable Section 1983 claim, for violation of the Due Process Clause. An authorized deprivation is one carried out pursuant to established state procedures, regulations or statutes. Piatt v. McDougall, 773 F.2d 1032, 1036 (9th Cir. 1985).

process plaintiff's administrative grievance against Sawaya, whatever their motivation. Nevertheless, with these standards as guidance, plaintiff may attempt to state a cognizable claim against one or more of these defendants in an amended complaint.

**V.     Leave to File Amended Complaint**

For the reasons set forth above, plaintiff's complaint is not adequate to proceed. See 28 U.S.C. § 1915A. However, plaintiff will be granted leave to file a First Amended Complaint that attempts to state a cognizable claim against one of more defendants. Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967) (an amended complaint supersedes the prior complaint). If plaintiff chooses to file an amended complaint, the complaint must allege in specific terms how defendant allegedly violated plaintiff's constitutional rights. Rizzo v. Goode, 423 U.S. 362, 371 (1976). There can be no liability under Section 1983 unless there is some affirmative link or connection between defendant's actions and the claimed deprivation. Id.; May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson, 588 F.2d at 743. Vague and conclusory allegations of official participation in civil rights violations are not sufficient. Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

**IX.     Conclusion**

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's request to proceed in forma pauperis, ECF No. 2, is granted.

2. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action. Plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). All fees shall be collected and paid in accordance with this court's order to the Director of the California Department of Corrections and Rehabilitation filed concurrently herewith.

3. Plaintiff's complaint, ECF No. 1, shall not be served. Plaintiff is granted leave to file a First Amended Complaint, on the form provided herewith, within thirty (30) days after service of this order, subject to the legal standards set forth herein. Failure to timely file a First Amended Complaint will result in a recommendation that this action be dismissed without prejudice.

4. The Clerk of Court is directed to send plaintiff, together with a copy of this order, a copy of the form complaint used by prisoners in this district to pursue a civil rights action under 42 U.S.C. § 1983.

DATED: November 20, 2019

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE